[No. B187770. Second Dist., Div. Eight. June 19, 2007.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
TARON GRANT JAMES, Defendant and Appellant.

**COUNSEL**

Law Office of Marc E. Angelucci and Marc E. Angelucci for Defendant and Appellant.

Lori A. Cruz and Fesia A. Davenport for Plaintiff and Respondent.

**OPINION**

**BOLAND, J.—**

### SUMMARY

Under a default judgment, a trial court declared a man was the father of a child and determined he was obligated to pay child support. After the man made child support payments, genetic testing determined he was not the father. Based on the test results, the man moved to set aside the paternity judgment and obtain reimbursement of support payments made. The court set aside the paternity judgment, but determined the man was not entitled to reimbursement under either the Family Code or case law. We likewise conclude that the statutory and decisional authority preclude reimbursement and, therefore, affirm the order.

## PROCEDURAL AND FACTUAL BACKGROUND

In 1992, Tami Burton gave birth to a son, Tyler, and named appellant Taron Grant James as the child's father on the birth certificate. When Tyler was born, appellant was in the military service assigned to the Persian Gulf and was unaware of the child's birth. Burton subsequently sought child support payments through appellant's military benefits. Her request for child support was appellant's first notice of Tyler's birth.

Appellant denied he was Tyler's father. In response to Burton's request, the military informed her that in order to obtain child support, she and appellant would be required to undergo genetic testing. The military further informed Burton that appellant would be granted leave to participate in genetic testing following his return from the Persian Gulf. Despite appellants' offer to pay for the genetic testing, Burton never sought it. Instead, she requested child support benefits from the County of Los Angeles, naming appellant as Tyler's father.

In 1994, following Burton's application to receive child support benefits through the county, the district attorney filed a complaint to establish appellant's parental relationship with Tyler and his obligation to pay child support. Although the complaint was served on appellant, he failed to respond to it. As a result, a default judgment was entered in 1996 declaring appellant to be the father and ordering him to pay $121 a month in child support through the county. After judgment was entered, appellant made child support payments but continued to deny paternity and played no role in Tyler's life. Following entry of judgment, appellant filed three motions.

In 1997, appellant moved to set aside the default judgment, asserting he was not Tyler's father and had not been properly served, and requested genetic testing. The trial court found appellant was properly served and denied the genetic testing request.

In 2001, appellant and Tyler participated in genetic testing that determined appellant was not the father. Based on the test results, in July 2001 appellant moved to set aside the judgment and obtain reimbursement of the child support payments he had made through the county. In opposing the motion, the county asserted that appellant failed to prove the necessary extrinsic fraud to set aside the paternity judgment and the 1996 determination was res judicata as to the issue of paternity. In 2002, the county and appellant stipulated that the county was closing the case for any unassigned child support and arrearages, but appellant remained obligated to pay assigned arrearages.

In 2006, appellant moved under Code of Civil Procedure section 1008 to "renew" his two earlier motions, asserting that *County of Los Angeles v. Navarro* (2004) 120 Cal.App.4th 246 [14 Cal.Rptr.3d 905] (*Navarro*) and Family Code section 7648.4 (section 7648.4) authorized reimbursement of child support payments. The court set aside the judgment of paternity, but denied reimbursement on the ground that neither section 7648.4 nor *Navarro* authorized reimbursement.

Appellant appeals from these orders on the grounds that *Navarro* requires reimbursement, section 7648.4 does not preclude reimbursement, and Code of Civil Procedure section 1008 authorized "renewal" of his earlier motions.

## DISCUSSION

### I. *Standard of Review.*

The issues presented are: first, whether a declared father who makes child support payments under a default judgment is entitled to reimbursement for those payments after a later determination that he is not the father; and second, whether appellant's motion for reconsideration was properly denied.

Because appellant's entitlement to reimbursement of child support payments turns on a question of law, the trial court's ruling denying reimbursement is reviewed de novo. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26].) The ruling on a motion for reconsideration, on the other hand, is reviewed under an abuse of discretion standard. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 [45 Cal.Rptr.2d 695].)

### II. *Family Code section 7648.4 precludes reimbursement after a declared father is determined not to be the actual father.*

Appellant argues an entitlement to reimbursement under the Family Code. We disagree.

Section 7648.4 does not permit a child support reimbursement order in favor of an erroneously declared father. Moreover, the section's legislative history reveals an intent to preclude a declared father from receiving reimbursement. Accordingly, we conclude that the Family Code does not authorize reimbursing appellant for child support payments made before genetic testing excluded him as the father.

■ Section 7648.4 specifies the remedies available to a declared father who maintains he is not the actual father of a child and is not obligated to support the child. The section specifically addresses the issue of reimbursing a declared father who successfully set aside a previous judgment of paternity. It states, "[n]otwithstanding any other provision of law, if the court grants a motion to set aside or vacate a paternity judgment pursuant to this article, the court shall vacate any order for child support and arrearages issued on the basis of that previous judgment of paternity. The previously established father has no right of reimbursement for any amount of support paid prior to the granting of the motion." (§ 7648.4.) A plain reading of the statutory language precludes reimbursement.

Furthermore, the reading is consistent with the legislative intent underlying section 7648.4. The section was intended to protect a declared father who, under existing law, lacked the procedural means to set aside or vacate an existing paternity decree after genetic testing determined he was not the biological father. While the statutory change was designed to enable a declared father to challenge a paternity decree, it was also intended to safeguard the child. The Legislature considered granting a declared father the right to seek reimbursement from the mother, but concluded that reimbursement may adversely affect the mother's ability to financially provide for the child. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 252 (2003–2004 Reg. Sess.) as amended June 4, 2003, pp. 1, 9.) In enacting section 7648.4, the Legislature was aware of the harm that paternity fraud inflicted on a declared father. Nevertheless, it sought to balance the competing interests of a declared father and a child, and concluded that a right of reimbursement should not be permitted. As a result, section 7648.4 precludes reimbursement.

Appellant further argues that section 7648.4 does not bar reimbursement where a declared father filed a motion to set aside the paternity decree before section 7648.4 was enacted. Appellant, in effect, urges the creation of a statutory exception to the reimbursement bar for a declared father who files a motion before the section's enactment. Implicit in the Legislature's determination that a declared father possessed "no procedural means" to challenge a paternity decree was a recognition that a father may have previously sought and failed to set aside that determination. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 252 (2003–2004 Reg. Sess.) as amended June 4, 2003, p. 1.) Nevertheless, in the interest of protecting a child, it concluded that the paternity fraud victim was not entitled to seek reimbursement. Therefore, the statute bars reimbursement regardless of when a declared father moved to set aside a paternity decree.

III. Navarro *does not entitle a declared father to reimbursement.*

In addition to seeking reimbursement under the Family Code, appellant argues that *Navarro* authorizes reimbursement. *Navarro*, decided approximately four months before section 7648.4 was enacted, granted relief to a declared father on equitable grounds. Navarro had consistently denied paternity and any relationship with the child. (*Navarro, supra*, 120 Cal.App.4th at p. 248.) He later moved to set aside a default judgment because genetic testing performed in a separate paternity action determined he was not the biological father. The County of Los Angeles acknowledged the erroneous paternity determination, but nonetheless opposed Navarro's motion. This Division conceded that, under a strict application of the law, relief should be denied on the ground that Navarro's motion to set aside the default judgment was untimely. (*Ibid.*) Nevertheless, the trial court's decision denying Navarro's motion was reversed on equitable grounds. We expressed the view that "[s]ometimes even more important policies than the finality of judgments are at stake," noting that mistakes in a child support action should be corrected rather than exploited. (*Id.* at p. 249.) *Navarro* held that a paternity decree may be set aside if later genetic testing excludes a declared father as the biological father. (*Ibid.*)

*Navarro*, however, does not stand for the proposition that an erroneously declared father is entitled to reimbursement. Reimbursement was not an issue in the case. Navarro had simply moved to set aside a prior judgment. Because *Navarro* does not stand for the proposition that a declared father is entitled to reimbursement, appellant's reliance on the case is misguided.

IV. *Appellant may not "renew" prior motions under Code of Civil Procedure section 1008, subdivision (b).*

Finally, appellant asserts an entitlement to "renew" his 1997 and 2001 motions under Code of Civil Procedure section 1008, subdivision (b). In relevant part, the section states, "[a] party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law." (Code of Civ. Proc., § 1008, subd. (b).) Appellant contends that new law in the form of section 7648.4 and *Navarro* authorizes reimbursement and that genetic testing results provide new facts. Due to the purported new law and facts, he argues the trial court should have reconsidered his previous motions and granted his reimbursement request.

The trial court denied the motion for reconsideration determining that appellant failed to cite any statutory or decisional authority entitling him to reimbursement. We likewise conclude that neither section 7648.4 nor *Navarro* authorizes reimbursement. Therefore, the court did not abuse its discretion when it denied appellant's request for reconsideration.

## DISPOSITION

The order denying reimbursement is affirmed.

Cooper, P. J., and Rubin, J., concurred.

**RUBIN, J.,** Concurring.—I join in the majority opinion which I have signed but write separately to express some of the concerns that remain following our opinion in *County of Los Angeles v. Navarro* (2004) 120 Cal.App.4th 246 [14 Cal.Rptr.3d 905] (*Navarro*) and the Fifth Appellate District's decision in *County of Fresno v. Sanchez* (2005) 135 Cal.App.4th 15 [37 Cal.Rptr.3d 192] (*Sanchez*). Although the Legislature responded to *Navarro* by enacting Family Code section 7648.4 (see *Sanchez*, at pp. 17, 19), the present case suggests further legislative consideration may be appropriate.

In *Navarro, supra,* 120 Cal.App.4th 246, we were presented with the legal straightjacket in which the County of Los Angeles had dressed Mr. Navarro after genetic testing had conclusively proved that he was not the father of two boys. The county had earlier obtained a default judgment against him that had legally established paternity, albeit without testing. Several years after the entry of the default judgment, San Bernardino County filed a separate paternity action against him involving the same children. In the second action, paternity tests were utilized and established that Mr. Navarro was not the boys' father. San Bernardino County responsibly dismissed its lawsuit. Remarkably, the County of Los Angeles refused Mr. Navarro's request to set aside the earlier default judgment which, as the San Bernardino litigation had demonstrated, was factually without merit. The trial court applied existing law and refused to vacate the county's judgment.

We reversed, relying in part on the Legislature's policy pronouncement from the Child Enforcement Fairness Act of 2000: " 'The efficient and fair enforcement of child support orders is essential to ensuring compliance with those orders and respect for the administration of justice . . . . Thousands of individuals each year are mistakenly identified as being liable for child

support actions. As a result of that action, the ability to earn a living is severely impaired, assets are seized, and family relationships are often destroyed. It is the *moral, legal, and ethical obligation of all enforcement agencies* to take prompt action to recognize those cases where a person is mistakenly identified as a support obligor in order to minimize the harm and *correct any injustice to that person.*' (Stats. 1999, ch. 653, § 1, italics added.)" (*Navarro, supra*, 120 Cal.App.4th at p. 249.)

The issue before us deals not with the setting aside of a factually unsupportable default paternity judgment; here, the trial court properly set aside the judgment against appellant after genetic testing proved that he was not the father. Appellant takes the next logical step and asks that the county be ordered to reimburse him for the monies he previously paid to the county.[1]

The majority concludes, as do I, that reimbursement is barred by the express language of Family Code section 7648.4 (section 7648.4). That statute is part of a "comprehensive scheme" for providing relief from the types of unfortunate default judgments present in this case. (*Sanchez, supra*, 135 Cal.App.4th p. 17.) In words that are unmistakable, the Legislature has provided that the "previously established father has no right of reimbursement for any amount of support paid prior to the granting of the motion." (§ 7648.4.) When the words of a statute are clear, we do not alter or amend them to accomplish a purpose that does not appear on the face of the statute. Instead, we must give effect to the statute's plain meaning. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; see also *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 499 [21 Cal.Rptr.3d 315].)

This case, nevertheless, calls into play whether reimbursement from a *public agency* ought to be governed by the same prohibition as reimbursement from a child's mother when the assumed father is later genetically determined not to be a parent. Notwithstanding the clarity of the legislative language, there is some indication that the drafters were concerned primarily, perhaps exclusively, with reimbursement from a parent. When section 7648.4 was in the form of Assembly Bill No. 252, a report on the bill compared it

---

[1] As in *Navarro*, the County of Los Angeles in the present case first obtained a default judgment against appellant without the benefit of genetic testing. Five years later DNA testing revealed that appellant was not the father. As in *Navarro*, the county opposed the setting aside of the default judgment, and the court refused to vacate it. Later, the parties agreed that the county would seek no future child support payments in light of the genetic test results. Two years later, appellant renewed his motion to vacate the judgment and sought reimbursement for monies already paid to the county. On this occasion, the county did not object to the setting aside of the judgment but did oppose any reimbursement.

with the circulating Senate version: "AB 252 includes an express statement that there is no right to reimbursement of child support already paid, an issue as to which SB 1030 is silent. *The potential for a previously established father to seek reimbursement from the mother could be financially devastating to a child.*" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 252 (2003–2004 Reg. Sess.) as amended June 4, 2003, p. 9, italics added.) An earlier Assembly Committee report on Senate Bill No. 1030 (2003–2004 Reg. Sess.) provided additional detail: "Silence on Reimbursement Right: SB 1030, as introduced, included provisions permitting a previously established father to seek reimbursement from the mother of child support already paid. These provisions have been amended out of the bill and it now is silent on the issue of reimbursement. This silence leaves it unclear as to whether reimbursement might be sought. AB 252, by contrast, expressly states that there is no right to reimbursement. Given the devastating financial effect that an order for reimbursement could have on a child, AB 252's express statement barring an action for reimbursement appears to be warranted." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1030 (2003–2004 Reg. Sess.) as amended Apr. 21, 2003, pp. 7–8.)

Although the earlier version of Senate Bill No. 1030 (2003–2004 Reg. Sess.) allowed reimbursement from the mother only, the ban against repayment was absolute in Assembly Bill No. 252 (2003–2004 Reg. Sess.) and as enacted as section 7648.4. Nevertheless, the warning contained in the last sentence of the Assembly Report—referring to the devastating effect a reimbursement order could have on a child—would appear not to apply to reimbursement of funds paid to the public agency.

In the case of the assumed father who is later adjudged not to be a parent, there may very well be no "guilty" parties. The mother and assumed father may have honestly felt that parentage existed and the county or other public agency properly discharged its duty to collect child support from the assumed father. Nevertheless when "the type of mistake" (*Sanchez, supra,* 135 Cal.App.4th at p. 17) that is present here does occur, as between the public agency and the once assumed father, fairness may dictate full or partial reimbursement from the public agency without imposing any financial hardship on the mother or child. Although the language used by the Legislature in enacting section 7648.4 precludes an interpretation that authorizes reimbursement from public agencies, if that is not what the Legislature meant, it always has the opportunity to correct the misimpression. Permitting reimbursement under these situations would actually further the legislative mandate of the Child Enforcement Fairness Act of 2000 which, as noted, exhorts all enforce-

ment agencies to "correct any injustice"—not merely to cease perpetuating injustice—to those mistakenly identified as support obligors.

Appellant's petition for review by the Supreme Court was denied September 25, 2007, S154945. Baxter, J., Chin, J., and Moreno, J., were of the opinion that the petition should be granted.