Filed 3/7/13  Goble v. Fuller CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| WILLIAM D. GOBLE, | |
| Plaintiff and Appellant, | G046403 |
| v. | (Super. Ct. No. 97P003581) |
| BRENDA K. FULLER, | O P I N I O N |
| Defendant and Respondent, | |
| ORANGE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Intervenor and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kim R. Hubbard, Judge.  Affirmed.

William D. Goble, in pro. per., and Jeffrey Paul Lustman for Plaintiff and Appellant.

No appearance for Defendant and Respondent Brenda K. Fuller.

Fesia A. Davenport, Chief Attorney County of Los Angeles Child Support Services Department, Richard Kim, Staff Attorney County of Los Angeles Child Support

Services Department for Intervenor and Respondent County of Orange Department of Child Support Services.

*     *     *

The County of Orange (County) Department of Child Support Services (DCSS) successfully moved to modify William D. Goble's guideline child support obligations for his now 16-year-old son, obtaining an increase of $18 per month (increasing Goble's support obligation from $290 to $308 per month). Although he filed nothing in opposition to the modification request, and did not argue the nominal increase in child support was unwarranted, Goble subsequently moved to vacate the modification order and all other orders issued in the action on the grounds the entire Orange County Superior Court bench was disqualified from considering child support proceedings to which the DCSS is a party as intervenor because the judges receive "illegal" supplemental employment benefits paid by the County. Goble also asserted the modification order, which was issued by a court commissioner, was void because he was not advised of his right to object to the commissioner sitting as a temporary judge. Goble appeals from the order denying his motion to vacate. We reject his contentions and affirm the order.

FACTS AND PROCEDURE

In 1997, Goble filed a petition to establish a parental relationship with his son, Zachary, who was born in 1996. Apparently, child support was ordered and at some point the right to support assigned to DCSS. The petition and original orders are not in the record on this appeal.

In 2004, Goble and Zachary's mother, Brenda Fuller, stipulated to a custody and support order that gave Fuller "primary physical custody" of Zachary, with Goble having "secondary physical custody" and visitation. They stipulated that Goble would pay guideline child support to Fuller, an amount set at $290 a month.

2

In April 2010, Goble moved to obtain primary physical custody of Zachary, an attempt that apparently failed. In August 2010, Fuller obtained a five-year restraining order prohibiting Goble from contacting her or Zachary.

On January 19, 2011, DCSS (as intervenor) filed a motion to modify Goble's child support obligation, which was set for hearing on May 11, 2011. The notice of motion served on Goble included, in bold print at the top of page two, a "Notice" advising the parties the case might be referred to a court commissioner who would act as a temporary judge in the absence of an objection by either party prior to the hearing. Moreover, the notice advised that if a party objected to the commissioner acting as temporary judge, the motion could still be heard by the commissioner to make findings and a recommended order, which would become the final order of the court if no objections were filed within 10 days. Fuller submitted an income and expense declaration for the May 11 hearing; Goble did not.

The child support modification matter was assigned to Commissioner Duane Neary for hearing. At the May 11, 2011, hearing, Goble appeared by telephone. The minute order states, "At the beginning of calendar call, [Commissioner Neary] gave the advisement he is sitting as a temporary [j]udge and will hear this matter unless objected to. No objections stated, the matter proceeds. [¶] [Goble] advises the court he is audio taping and videotaping the proceeding, although appearing telephonically. [¶] [Goble] requests the court observe all of his common law rights. [¶] The [c]ourt states [it] will observe all of [Goble's] common law rights and rights under the Constitution." The court continued the hearing to October 18, 2011, to allow Goble to comply with discovery orders, and ordered Goble to return on that date.

On October 13, 2011, Goble, in propria persona, filed a document titled "notice of non stipulation" stating he would not stipulate to any temporary judge and citing California Constitution, article VI, section 21.

3

Goble did not appear at the October 18, 2011, continued hearing on the motion to modify child support, and he did not file opposition or an income and expense statement. Accordingly, the matter proceeded as an uncontested matter. The court ordered guideline child support increased to $308 a month based on its finding Goble could earn at least $1,387 a month. The minute order noted the court had ordered Goble to appear telephonically, but no telephone calls had been received, and there was no appearance by Goble. The order stated the parties had been advised prior to commencement of the hearing that the commissioner would be sitting as a temporary judge unless there were objections, and no objections were stated. The order also noted "for the record" the court was in receipt of Goble's October 13 "[n]otice of [n]on [s]tipulation."

On November 22, 2011, Commissioner Neary issued an order to show cause (OSC) regarding contempt for nonpayment of child support. The OSC was set for hearing on January 27, 2012. Apparently other OSCs were set as well, but there is nothing in this record concerning their disposition.

On December 2, 2011, Goble, in propria persona, filed a motion to "void all orders" that was set for hearing on January 6, 2012. His moving papers contained allegations that "'extrinsic fraud,'" "'obstruction of justice,'" and "'corruption'" on the part of the Orange County Superior Court bench and DCSS rendered all orders in this action void for the following reasons. First, Goble argued the judges received "illegal" supplemental employment benefits paid by the County, which was a party to the support modification proceedings, and accordingly all were disqualified to hear the modification motion. (Goble attached a November 7, 2011, letter from the County Auditor-Controller responding to a Public Records Act request stating Superior Court judges each receive supplemental payroll and benefits of about $9,500 annually from the County, plus reimbursement for health and dental premiums and other health and dental costs, and an "[o]ptional [b]enefit [p]lan" of $4,500.) Additionally, Goble asserted DCSS had a financial incentive to obtain child support orders so as to qualify for "Title IVD federal grants" to

4

fund its operations and thus it too was corrupt and biased in this matter. Moreover, Goble asserted the judges' failure to disclose they received supplemental benefits, and DCSS's failure to disclose it received federal funds based on child support orders it obtained, constituted "'extrinsic fraud'" requiring all orders be vacated.

On December 20, 2011, Goble filed another motion "to void all orders" set for hearing on January 20, 2012. The December 20 motion contained many of the same allegations as the December 2 motion, but added additional allegations as to orders issued by Commissioner Neary on October 18 (modifying support) and November 22 (issuing an OSC regarding contempt for nonpayment of support). In particular, Goble asserted the statement contained in the October 18 minute order that the parties had been advised prior to commencement of the hearing that the commissioner would be sitting as a temporary judge unless there were objections, and no objections were stated, was "fraudulent" because Commissioner Neary also stated he was aware of Goble's October 13 "[n]otice of [n]on [s]tipulation."

The record on appeal contains a minute order from a January 6, 2012, hearing before Commissioner Neary that appears to encompass one of Goble's motions to void prior orders and additional support issues. The order notes Goble objected to Commissioner Neary sitting as temporary judge, and Commissioner Neary would hear support issues as a referee making findings and recommendations to which Goble would have 10 days to file objections. The court noted the motions to void prior orders would be heard by a trial judge and continued the hearing on the support issues. There is nothing further in the record about this particular support matter.

Goble's motions to vacate were heard and denied by Judge Kim R. Hubbard on January 20, 2012. (Although the record on appeal contains only two motions, Judge Hubbard noted there were three motions to vacate filed, each making the same basic claims, and all were being denied.)

5

Goble represented himself at the hearing. Fuller was represented by counsel, and there was no appearance for DCSS, but it filed written opposition. Goble testified that at the original hearing on May 11, 2011, he appeared by telephone and he never heard Commissioner Neary say he was sitting as temporary judge unless there was an objection. Goble claimed he had an audiotape of the hearing and "there was no mention about anything . . ." but he did not have the audiotape with him. Judge Hubbard concluded there was no basis to contradict what was in the May 11 hearing minute order. With regard to Goble's argument all Superior Court judges were necessarily biased and had to recuse themselves because of their receipt of supplemental benefits from the County, Judge Hubbard observed the payment of supplemental benefits was determined to be legal and there was no evidence of any conspiracy or bias against Goble. The court's minute order denying the motions stated that at the May 11, 2011, hearing, Goble was advised of his right to object to Commissioner Neary as temporary judge and he did not object. Therefore Goble's notice of non-stipulation filed before the continued October 18 hearing date was not timely. Moreover because Goble did not appear at the October 18 hearing, there was no fraud.

DISCUSSION

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "The burden of affirmatively demonstrating error is on the appellant. This is a general principle of appellate practice as well as an ingredient of the constitutional doctrine of reversible error. [Citations.]" (*Fundamental Investment Etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) These principles apply equally to appellant's representing themselves in propria persona. (See *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638 [litigants representing themselves in propria persona are to be held to same standards as lawyers].)

Goble did not appeal from the order modifying his child support. He appealed from the subsequent order denying his motions to vacate the modification order (and all other orders in this paternity action). Goble styled his motion as one to set aside "void" orders under Code of Civil Procedure section 473, subdivision (d). Under that provision, "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order." (Code Civ. Proc., § 473, subd. (d).) "'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' [Citation.]" (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441.) We review de novo a trial court's ruling on a claim a judgment is void on its face. (*Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146.)

If the order or judgment is not void on its face, a motion to set it aside is directed to either the trial court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473, subdivision (b), if the relief is sought within six months, and thereafter "'"directed to the court's inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake." [Citations.]' [Citation.] [¶] '"Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: . . . failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." [Citations.] Extrinsic fraud only arises when one party has in some way fraudulently been prevented from presenting his or her claim or defense. [Citations.]' [Citation.]" (*Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 290.) In that case, we review a trial court's ruling on a motion to set aside an order or judgment for an abuse of discretion. (*In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1346.) "The test for abuse of discretion is 'whether

7

the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1283.) Additionally, we presume the court found every fact or inference essential to support the order. (*Reid v. Valley Restaurants, Inc.* (1957) 48 Cal.2d 606, 609.)

We conclude Goble has not shown the child support modification order, or any other order rendered in this case, is void on its face, and the trial court did not abuse its discretion in finding there was no fraud or mistake supporting Goble's request to set the order(s) aside.

*1. County Paid Supplemental Judicial Benefits*

Goble's appellate brief contains a litany of arguments as to why the order denying his motions to "void" the child support modification order, and all other orders in this action, should have been granted. Most of his arguments are related to (or are intertwined with) his contention the County's payment of supplemental employment benefits to judges is "illegal," the judges' receipt of such benefits renders them necessarily biased in child support cases in which DCSS is a party disqualifying them from hearing any such cases, and renders all orders issued by the judges in those cases void. Moreover, Goble asserts the judges' failure to disclose to litigants the receipt of supplemental benefits from the County constitutes extrinsic fraud further requiring their orders be vacated. The premise of Goble's arguments is wrong. The receipt of supplemental benefits from the County is not "illegal" and does not disqualify the bench in cases in which the County is a party.

The "legality" of county-paid supplemental judicial benefits was addressed and resolved in *Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630 (*Sturgeon I*) and *Sturgeon v. County of Los Angeles* (2010) 191 Cal.App.4th 344 (*Sturgeon II*) [rev. denied Mar. 26, 2011]. In *Sturgeon I*, the court concluded the County of Los Angeles's payment of supplemental judicial benefits (totaling about 27 percent of a judge's total salary) did run afoul of article VI, section 19 of the California Constitution, which requires

8

the Legislature "'prescribe compensation for judges of record.'" (*Sturgeon I, supra,* 167 Cal.App.4th at p. 635.) But *Sturgeon I,* decidedly rejected contentions the supplemental benefits constituted an illegal gift of public funds or violated the Lockyer-Isenberg Trial Court Funding Act of 1997. (*Id.* at p. 642.)

In response to *Sturgeon I*, the Legislature passed Senate Bill X2 11, which added section 68220 to the Government Code providing in relevant part, "(a) Judges of a court whose judges received supplemental judicial benefits provided by the county or court, or both, as of July 1, 2008, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date." In *Sturgeon II*, 191 Cal.App.4th at page 352, the court held SB X2 11 "satisfied the requirement of article VI, section 19 of the California Constitution that the Legislature prescribe the compensation of judges." The supplemental benefit payments "are clearly now 'prescribed' under even the strictest interpretation of the term." (*Id.* at p. 353.) "[T]he Legislature has plainly articulated its desire that judges continue receiving benefits from counties and courts . . . ." (*Id.* at p. 354)

Goble complains that SB X2 11 contains an unconstitutional "retroactivity" provision immunizing from liability those public entities and public employees who authorized and paid supplemental judicial benefits to judges before enactment of SB X2 11. Section 5 of SB X2 11 provides, "Notwithstanding any other law, no governmental entity, or officer or employee of a governmental entity, shall incur any liability or be subject to prosecution or disciplinary action because of benefits provided to a judge under the official action of a governmental entity prior to the effective date of this act on the ground that those benefits were not authorized under law." We fail to see the relevance of the argument given that there is no issue before us concerning any such disciplinary proceeding against County officials who authorized and paid supplemental judicial benefits.

Goble also complains the payment of supplemental judicial benefits violates several international treaties addressing corruption. He refers to the Inter-American

9

Convention Against Corruption, the Agreement Establishing the Group of States against Corruption, the United Nations Convention Against Corruption, and the International Covenant on Civil and Political Rights, but other than reciting a litany of provisions from the text of those treaties, Goble engages in no reasoned legal analysis of *how* the County's payment of supplemental benefits to its judges violates international treaties or international law. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"] see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 (*Kim*) [same].)

Goble's contention the Superior Court judges' receipt of supplemental benefits renders them necessarily biased in child support cases in which DCSS is a party, requiring recusal of the entire bench from such cases, and a judge's failure to disclose the receipt of such benefits constitutes extrinsic fraud is also without merit. *Silva v. County of Los Angeles* (C.D. Cal. 2002) 215 F.Supp.2d 1079 (*Silva*), is instructive. That case involved a class action brought against Los Angeles County, Los Angeles County Superior Court judges and commissioners, and state appellate court justices, making similar allegations— that payment of local judicial benefits to judges and the failure to disclose those benefits violated due process and other constitutional rights because it potentially biased judges in cases in which the county was a party. (*Silva, supra,* 215 F.Supp.2d at p. 1086.) (The appellate court justices were sued on the theory that because they once sat on the Superior Court, they knew about and had received similar supplemental benefits, making them biased as well. (*Id.* at p. 1082.))

The federal district court in *Silva*, relying on a California Supreme Court case, *Lolley v. Campbell* (2002) 28 Cal.4th 367 (*Lolley*), rejected the contention. *Silva* explained that in "*Lolley*, an employee represented himself during an administrative hearing before the Labor Commissioner, after which the Labor Commissioner awarded him $27,216.14 in unpaid overtime wages, penalties and interest. The employer appealed the award to the

10

superior court, and the Labor Commissioner agreed to represent the employee on appeal (as authorized by state law) so long as the employee agreed to assign him any attorneys' fees he received. The superior court held a hearing de novo and again awarded damages to the employee. The employee then sought attorneys' fees. [¶] In the California Supreme Court, the employer argued that awarding fees to the Labor Commissioner deprived him of due process because it gave the commissioner '"a pecuniary interest in the case, thus denying the employer an impartial and fair hearing before the Labor Commissioner."' [Citation.] The California Supreme Court rejected the employer's due process challenge because he had not demonstrated that the commissioner had '"a direct, personal, substantial, pecuniary interest"' in the case. [Citation.] The Court contrasted the case with [the case relied upon by the employer], 'which found a violation of due process where the defendant was tried by the mayor of a village for violating the Prohibition Act, because the mayor's fees for acting in this capacity were paid by fines collected from the defendant. The mayor would be paid for his services as a judge only if he found the defendant guilty.' [Citation.]" (*Silva, supra,* 215 F.Supp.2d at pp. 1086-1087.)

*Silva* reasoned "[t]he facts alleged in [the current] complaint are even less consistent with a due process violation than the facts in *Lolley*. There, the Labor Commissioner had an indirect incentive to award damages to the employee, because the employer might appeal such a ruling, thereby creating the possibility that he could later collect attorneys' fees. Had the Labor Commissioner ruled in the employer's favor, he would have destroyed the possibility of his later recovering attorneys' fees. Nonetheless, the California Supreme Court decided that the monetary incentive to rule in favor of the employee was too indirect and insubstantial to raise the specter of potential bias. [¶] Here, the County pays local judicial benefits to Superior Court judges regardless of the outcome of any particular case, and thus there is no incentive for a Superior Court judge to rule in the County's favor." (*Silva, supra,* 215 F.Supp.2d at p. 1087.) *Silva* additionally rejected the

11

notion a judge must disclose the receipt of county-paid employment benefits because it was already a matter of public record.  (*Id.* at p. 1086, fn. 6.)

We agree with the reasoning in *Silva*.  Here, as in *Silva*, Goble "simply has not demonstrated a realistic, immediate possibility that the County will stop paying local judicial benefits to Superior Court judges if they render decisions unfavorable to the County. [Citation.]"  (*Id.* at p. 1088; see also *Fine v. Sheriff of Los Angeles County* (9th Cir. Dec. 16, 2009, No 09-56073) 2009 WL 4874116 (*Fine*)[1] [judge's receipt of supplemental employment benefits from county, a party in the litigation, did not give judge "a 'direct personal, substantial, pecuniary interest' in the matter.  [Citation.]"].)  Accordingly, Goble's argument the judges issuing orders in this child support case were all required to recuse themselves, is unfounded.[2]

---

[1]     DCSS cited this unpublished memorandum opinion in its respondent's brief. An unpublished federal court case may be cited, and relied upon by us, as persuasive authority.  (See *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6.)  DCSS failed to initially provide us with a copy of the unpublished opinion (see Cal. Rules of Court, rule 8.1115(c)), but on January 2, 2013, it filed a motion to furnish us with a copy.  Goble opposed the request.  DCSS's motion is GRANTED.

On November 20, 2012, Goble filed a request for judicial notice of the case summary in a Los Angeles County Superior Court case titled *Marina Strand Colony II Homeowners Association v. County of Los Angeles* (Super. Ct. Los Angeles County No. BS109420), which he asserts demonstrates the order underlying the Ninth Circuit's decision in *Fine, supra,* 2009 WL 4874116 is "null and void."  The case summary, which is attached to Goble's reply brief, appears to be a printout of the case summary information from the Los Angeles County Superior Court's public website, and Goble apparently is referring to the titles of documents filed by the plaintiff/petitioner.  Goble requests mandatory judicial notice of the website printout under Evidence Code section 451, subdivision (a), but the document does not constitute decisional, constitutional, or public statutory law.  He also requests we take permissive judicial notice of the document as a court record under Evidence Code section 452, subdivision (d), but the website itself specifically states the information contained on the site "does not constitute the official record of the court."  (https://www.lasuperiorcourt.org/civilcasesummary/index.asp) Goble's request for judicial notice is DENIED.

[2]     This reasoning similarly compels us to DENY Goble's motion filed August 6, 2012, to disqualify the justices on this court from deciding this appeal.

12

*2. Commissioner's Advisement*

We turn to Goble's second general argument regarding denial of his motion to set aside the October 18, 2011, order modifying child support.  He asserts the order must be set aside because he was not advised of his right to object to the matter being heard by a commissioner when it was called for calendar on May 11, 2011.  And he argues it was the product of "extrinsic fraud" because Commissioner Neary "fraudulently" stated in the October 18, 2011, minute order there had been no objections to his hearing the matter as temporary judge, when the court had received his "notice of non stipulation" filed before the continued hearing date.

"We begin with an overview of the applicable statutory procedure.  Child support matters, such as this, are referred to a commissioner.  ([Fam. Code,] § 4251, subd. (a); *County of Sacramento v. Llanes* (2008) 168 Cal.App.4th 1165, 1172 . . . .)  Section 4251, subdivision (b), provides in relevant part:  'The commissioner *shall* act as a temporary judge unless an objection is made by the local child support agency or any other party.' (Italics added.)  If a party objects to the commissioner acting as a temporary judge, the commissioner is still empowered to hear the matter, make findings of fact and issue a recommended order.  (§ 4251, subd. (c).)  If there is no objection to the recommended order within 10 court days, a judge shall ratify it as the order of the court.  If a timely objection is made to the recommended order, then the party is entitled to a hearing de novo before a judge.  (*Ibid*.)  As a result of the statutory scheme, a party must object twice to earn a trial de novo before a judge—first, to the commissioner acting as a temporary judge and, second, to the commissioner's recommendation.  (*County of Orange v. Smith* (2002) 96 Cal.App.4th 955, 961 . . . .)" (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1035.)

Substantial evidence supports Judge Hubbard's finding Goble was properly advised of his right to object to Commissioner Neary acting as temporary judge on the modification motion.  The minute order from the May 11, 2011, hearing specifically states

13

Commissioner Neary gave the requisite advisement at the beginning of calendar call and no objections were stated. Goble provided no admissible evidence to Judge Hubbard to alter the presumption that an official duty has been regularly performed. (Evid. Code, § 664.) Moreover, the notice of the May 11 hearing specifically advised Goble he had to object *before* the hearing.

On January 22, 2013, after briefing on this appeal was completed, Goble moved to augment the record with a reporter's transcript from the May 11, 2011, hearing, which he asserts demonstrates no advisement was given. (Cal. Rules of Court, rule 8.155 (a).) DCSS did not oppose the request. Goble's motion was renewed on February 8, 2013. We grant the motions, but the reporter's transcript does not alter our conclusion. There is no conflict between the minute order and the reporter's transcript. (See *Arlena M. v. Superior Court* (2004) 121 Cal.App.4th 566, 569-570 [where minute order conflicts with reporter's transcript, reporter's transcript generally prevails as official record].) Although the transcript does not reflect an advisement at the beginning of the hearing on the specific matter, it does not negate the statement in the minute order that the advisement *was* given at the beginning of the court's calendar call. Moreover, the reporter's transcript confirms that no objections were raised.

Goble offers no authority that continuing the support modification hearing to October 18 gave him a second chance to object to Commissioner Neary sitting as temporary judge, having failed to object when the matter began on May 11. But even were that the case, Goble did not appear at the continued hearing on October 18, and he filed no opposition to the modification request, which allowed the matter to proceed as an uncontested matter. Thus, Goble cannot complain about the modification proceeding having been heard and decided on October 18 by a temporary judge. As observed in *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1089-1090: "It has repeatedly been held that the term "'parties litigant'" means the parties who are taking part in the litigation—those who have appeared therein.' [Citation.] A party who has notice of a

14

proceeding but fails to appear or otherwise take part loses the status of party litigant. [Citation.] The parties who do appear and take part may thus stipulate to the appointment of a temporary judge without the consent of the absent, nonlitigating parties. [Citation.] In *Sarracino* [*v. Superior Court* (1974) 13 Cal.3d 1, 6-8], a defendant failed to appear at a hearing on applications for temporary support in a proceeding for dissolution of marriage and child support. The court held that the defendant's action was indistinguishable from default, and that the stipulation of the parties who did appear at that proceeding was therefore sufficient to empower the commissioner as a temporary judge. [Citation.]" Accordingly, Goble has not demonstrated he properly objected to Commissioner Neary proceeding as temporary judge in the support modification matter, and Judge Hubbard did not abuse her discretion by denying the motion to vacate the order modifying support.

3. *Other Issues*

Goble states because DCSS did not appear at the January 20, 2012, hearing on his motion to vacate prior orders, or file opposition, it has waived its right to defend the ruling on appeal. The argument is unsupported by citation to legal authority or analysis (see *Badie, supra,* 67 Cal.App.4th at pp. 784-785 [waiver]; *Kim, supra,* 17 Cal.App.4th at p. 979 [same]). Moreover, Goble himself provided us with DCSS's written opposition and his reply to that opposition demonstrating the argument is frivolous.

Goble reiterates his complaint made below that the DCSS has a financial incentive to seek support orders on behalf of children because it receives some federal funding for its operations based upon its rate of collection of such support. Goble has failed to offer any cogent reasoning as to how this casts any doubt upon the very nominal modification of child support ordered in this case and we decline to consider the point further. (See *Badie, supra,* 67 Cal.App.4th at pp. 784-785; *Kim, supra,* 17 Cal.App.4th at p. 979.)

15

DISPOSITION

The order is affirmed. Respondent DCSS's motion filed January 2, 2013, to provide the court with a copy of the unpublished opinion in *Fine v. Sheriff of Los Angeles County* (9th Cir. Dec. 16, 2009, No 09-56073) 2009 WL 4874116 is GRANTED. Appellant's request for judicial notice filed November 20, 2012, is DENIED. Appellant's motion filed August 6, 2012, to disqualify this court is DENIED. Appellant's motions filed January 22, 2013, and February 8, 2013, to augment the record on appeal to include the reporter's transcript from the May 11, 2011, hearing are GRANTED. Respondent DCSS is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


ARONSON, J.